UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
f/u/o KERRI ENTERPRISES, the ALLSTATE )
COMPANY INC. a Massachusetts corporation )
with a principal place of business )
in Norwood, Norfolk County )

**05 11339 NMG**

Plaintiff MAGISTRATE JUDGE ~~~ Civil Action No._____

)
v. )
)
UNITED STATES FIDELITY & )
GUARANTY COMPANY, a )
Maryland surety company registered to )
business in Massachusetts )
)
Defendant )

RECEIPT #_____
AMOUNT $ 250
SUMMONS ISSUED 90
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 6/27/05

## **COMPLAINT**

Plaintiff, United States of America, brings this case pursuant to 40 U.S.C. § 3131
*et seq.* for the use and benefit of Kerri Enterprises, the Allstate Company Inc., and for its
Complaint against Defendant, United States Fidelity & Guaranty Company, states as
follows:

### JURISDICTION AND VENUE

1.    Jurisdiction in the United States District Court is authorized by 40 U.S.C.
§ 3133.

2.    Venue is appropriate in the United States District Court for the District of
Massachusetts pursuant to 40 U.S.C. § 3133 because Middlesex County, Massachusetts,
is the place of performance for both the prime contract and the subcontract in the
instant matter.

### PARTIES

3.    The Plaintiff, United States of America, initiated this action for the use
and benefit of Kerri Enterprises, the Allstate Company Inc., a Massachusetts corporation,
with a principal place of business in Norwood, Norfolk County, Massachusetts
(hereinafter referred to as "Allstate").

LAW OFFICES OF
ROBERT PHILIP HILSON
A PROFESSIONAL CORP.
175 DERBY STREET
SUITE 12
HINGHAM, MA
02043
(781) 740-4118

4. The Defendant, United States Fidelity & Guaranty Company, is, upon information and belief, a Maryland surety company registered to do business in Massachusetts with a place of business at 300 Crown Colony Drive, Quincy, Norfolk County, Massachusetts (hereinafter referred to as "USF&G").

## STATEMENT OF FACTS

5. Upon information and belief, Roads Corporation is a Massachusetts corporation with a principal place of business in North Billerica, Middlesex County, Massachusetts (hereinafter referred to as "Roads").

6. The United States of America, acting through the United States Army Corps of Engineers, entered into a written contract with Roads for renovations to the Hanscom Air Force Base located in Bedford, Massachusetts, specifically Contract No. DACA33-01-C-0003 (hereinafter referred to as the "Project"), whereby Roads agreed to act as the prime contractor with respect to the Project.

7. Roads, as principal, and USF&G, as surety, executed a payment bond in the amount of $29,819,025.00, thereby securing payment of labor and materials furnished on the Project as required by 40 U.S.C. § 3131. (Exhibit A).

8. Roads, as prime contractor, entered into a written subcontract with Allstate, whereby Allstate agreed to provide certain labor and materials to the Project. (Exhibit B).

9. Roads, as prime contractor, authorized several change orders from Allstate, whereby Allstate agreed to provide additional labor and materials to the Project. (Exhibit C).

10. Allstate furnished labor and materials to the Project pursuant to its agreement with Roads.

11. Allstate provided labor and materials to the Project, pursuant to the subcontract agreement with Roads in the amount of $137,000.00.

12. Allstate provided additional labor and materials to the Project, pursuant to the change orders as authorized by Roads, in the amount of $177,737.00.

13. To date, Roads has paid Allstate a sum of $276,030.00 for the labor and materials Allstate provided to the Project.

14. Roads currently owes Allstate a balance due of $38,707.00, plus interest.

LAW OFFICES OF
ROBERT PHILIP HILSON
A PROFESSIONAL CORP
175 DERBY STREET
SUITE 12
HINGHAM, MA
02043
(781) 740-4118

2

15.    Despite repeated requests for payment from Allstate, Roads has failed, refused, and neglected and continues to fail, refuse, and neglect to pay Allstate for the labor and materials provided to the Project.

16.    Allstate last performed labor or furnished materials to the Project more than ninety (90) days, but less than one (1) year prior to the filing of the instant Complaint.

## COUNT I

(Action on a Miller Act Surety Bond: Breach of Contract)

17.    Allstate realleges, reavers, and incorporates herein the allegations set forth in paragraphs 1 through 16 above.

18.    Pursuant to U.S.C. § 3131 *et seq.*, Roads, as principal, and USF&G, as surety, executed a payment bond guaranteeing payment for all labor, materials, and equipment furnished for use in the performance of the prime contract between Roads and the United States Army Corps of Engineers, relating to the Project.

19.    Allstate is owed $38,707.00 for labor and materials furnished for use in the performance of the prime contract between Roads and the United States Army Corps of Engineers, relating to the Project.

20.    All conditions precedent to the maintenance of the instant action have been performed.

21.    WHEREFORE, the United States of America, for the use and benefit of Kerri Enterprises, the Allstate Company Inc., demands judgment against the Defendant, United States Fidelity & Guaranty Company, for $38,707.00, plus interest, costs and attorneys' fees.

## COUNT II

(Action on a Miller Act Surety Bond: Quantum Meruit)

22.    Allstate realleges, reavers, and incorporates herein the allegations set forth in paragraphs 1 through 21 above.

23.    Allstate substantially completed the obligations of its agreements with Roads and all extra work as required by Roads in good faith.

24.    The fair market value of the labor and materials provided by Allstate to Roads for the Project, for which Roads has not made payment is $38,707.00.

LAW OFFICES OF
ROBERT PHILIP HILSON
A PROFESSIONAL CORP
175 DERBY STREET
SUITE 12
HINGHAM, MA
02043

(781) 740-4118

3

25.    Despite repeated demands, Roads has failed, refused, and neglected and continues to fail, refuse, and neglect to pay Allstate the amounts due and owing.

26.    WHEREFORE, the United States of America, for the use and benefit of Kerri Enterprises, the Allstate Company, Inc., demands judgment against the Defendant, United States Fidelity & Guaranty Company, for $38,707.00, plus interest, costs and attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, the United States of America, for the use and benefit of Kerri Enterprises, the Allstate Company, Inc., demands judgement as follows:

1.    For judgment in its favor against the Defendant, United States Fidelity & Guaranty Company, for $38,707.00, plus interest, costs, and attorneys' fees in accordance with Count I, an action on a Miller Act Surety Bond.

2.    For judgment in its favor against the Defendant, United States Fidelity & Guaranty Company, for $38,707.00, plus interest, costs, and attorneys' fees in accordance with Count II, an action on a Miller Act Surety Bond.

3.    For such other and further relief as this Honorable Court deems just, fair and equitable.

> UNITED STATES OF AMERICA
> f/u/o KERRI ENTERPRISES,
> the ALLSTATE COMPANY INC.,
>
> By its attorneys,

Date: __6.27 5__

> Robert Philip Hilson (BBO #547899)
> Rebecca L. Dalpe (BBO #653996)
> Law Offices of Robert Philip Hilson
> A Professional Corporation
> 175 Derby Street, Suite 12
> Hingham, Massachusetts 02043
> (781) 740-4118

LAW OFFICES OF
ROBERT PHILIP HILSON
A PROFESSIONAL CORP.
175 DERBY STREET
SUITE 12
HINGHAM, MA
02043

(781) 740-4118

C:\wp61\DOCS\USA-ALL.COM ·

4

PAYMENT BOND
(See instructions on Page 2)

March 29, 2001

~ond No. SG1252

9000-0045

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION("X" ONE) | | |
|---|---|---|---|
| ROADS CORPORATION<br>241 Treble Cove Road<br>North Billerica, MA 01862 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☒ CORPORATION<br>STATE OF INCORPORATION<br>Massachusetts | | |

| SURETY(IES) (Name(s) and business(es) address) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY<br>385 Washington Street<br>St. Paul, MN 55102 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 29 | 819 | 025 | 00 |
| | CONTRACT DATE | | CONTRACT NO. | |
| | March 29, 2001 | | DACA33-01-C-0003 | |

ՆԼIGATION:
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:
The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:
The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | ROADS CORPORATION | **PRINCIPAL** | | | |
|---|---|---|---|---|---|
| Signature(s) | 1. (Seal) | 2. | 3. (Seal) | (Seal) | CORPORATE SEAL |
| Name(s) & Title(s) (Typed) | 1. Roland G. Farland, Jr.<br>V.P. Military Operations | 2. | 3. | | |

| | **INDIVIDUAL SURETY(IES)** | | | |
|---|---|---|---|---|
| Signature(s) | 1. (Seal) | 2. (Seal) | | (Seal) |
| Name(s) (Typed) | 1. | 2. | | |

| | **CORPORATE SURETY(IES)** | | | |
|---|---|---|---|---|
| S U R E T Y | Name & Address | UNITED STATES FIDELITY AND GUARANTY COMPANY<br>St. Paul / Minnesota | STATE OF INC.<br>MD | LIABILITY LIMIT<br>$ | |
| A | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. Kathleen M. Flanagan<br>Attorney-in-Fact | 2. | | |

NSN 7540-01-152-8061
PREVIOUS EDITION IS USABLE
S-1817/GEEF 7/99

25-205
Page 1 of 2

STANDARD FORM 25-A (REV.10-98)
Prescribed by GSA
FAR (48 CFR) 53.228(c)

**the St Paul**

# POWER OF ATTORNEY

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No. 22327

Certificate No. 660680

**KNOW ALL MEN BY THESE PRESENTS:** That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin *(herein collectively called the "Companies")*, and that the Companies do hereby make, constitute and appoint

Kathleen M. Flanagan, Bette A. Sampsel, Richard A. Leveroni, Gary J. Giulietti and Kelly L. Corso

of the City of _____ Newington _____ , State _____ Connecticut _____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and sealed this 3rd day of January , 2001

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

*John F. Phinney*

JOHN F. PHINNEY, Vice President

*Thomas E. Huibregtse*

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this 3rd day of January , 2001 , before me, the undersigned officer, personally appeared John F. Phinney and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 13th day of July, 2002.

*Rebecca Easley-Onokala*

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2000 Printed in U.S.A.

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **S U R E T Y** **B** | Name & Address | | | | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y** **C** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y** **D** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y** **E** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y** **F** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y** **G** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | |
| | Signature(s) | 1. | 2. | | CORPORATE SEAL |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated

"SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seals," and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

*Company Name*
*Bldg 1614; Roads' Job #21002*

**ROADS CORPORATION**
**241 TREBLE COVE ROAD**
**N. BILLERICA, MA  01862**

**AGREEMENT**
**BETWEEN CONTRACTOR AND SUBCONTRACTOR**

This Agreement (hereinafter called the Subcontract) is entered into this **6th day of May, 2003**, between **Roads Corporation** a duly organized Massachusetts Corporation with a usual place of business at 241 Treble Cove Road, North Billerica, Massachusetts (hereinafter referred to as "Contractor"),"and **Allstate Painting Co., Inc.**, .a Massachusetts Corporation with a usual place of business at **34 Day Street, Norwood, MA  02062  Tel:781-769-4300** (hereinafter referred to as "Subcontractor").

WHEREAS, Contractor has entered into **Contract No .DACA33-01-C-0003 (Roads' Job No. 21002)** (hereinafter referred to as the "Prime Contract") dated **March 28, 2001** with the **United States of America through the United States Army Corps of Engineers** (hereinafter referred to as the "Government" and/or Owner), pursuant to which Contractor is obligated to furnish the Government certain construction services [Supplies, services, etc.] as set forth in the Prime Contract Documents. As used herein, the Prime Contract Documents shall include, without limitation, said Prime Contract and general provisions, special provisions, specifications, plans, addenda, notices, instructions, bids, forms, and all other provisions or documents therein contained or incorporated by reference; and

WHEREAS, Contractor desires to subcontract a portion of the work it has undertaken under the Prime Contract to Subcontractor and Subcontractor having examined the said Prime Contract Documents and the site or sites of operations to be conducted thereunder, desires to enter into a Subcontract with the Contractor and assume the obligation to perform such a portion of the work, subject to the terms, conditions and provisions of this Subcontract;

NOW, THEREFORE, in consideration of the foregoing and the covenants contained herein, the parties agree as follows:

**ARTICLE 1**

**THE SUBCONTRACT DOCUMENTS**

**1.1.**    The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein, including Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Agreement between the Owner and Contractor, and Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement, and other Contract Documents, if any, listed in the Owner-Contractor Agreement; (3) other documents listed in Article 16 of this Agreement; and (4) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and upersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

**1.2**    The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the cost of reproduction.

**ARTICLE 2**

**MUTUAL RIGHTS AND RESPONSIBILITIES**

**2.1**    The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under the Prime Contract, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under the Prime Contract, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under the Prime Contract, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under the Prime Contract, has against the Owner, insofar as applicable to this Subcontract. Where a provision of the Prime Contract is inconsistent with a provision of this Agreement, this Agreement shall govern.

**2.2**    The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.

**ARTICLE 3**

**CONTRACTOR**

**3.1**    Services Provided by the Contractor

**3.1.1**    The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's work to avoid conflicts or interference in the Subcontractor's rk and shall expedite written responses to submittals made by the Subcontractor in accordance with Article 4.1 and Article 5. As soon as practicable after execution of this ment, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional ling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent n the construction and submittal schedules and additional scheduling details.

Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work.

Corporation: _MMP_ Dated: _5/28/03_          Initialed for Subcontractor: _AK_ Dated: _5/19/03_
' Building Subcontract                                                                                          1 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

**3.1.3**    Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

**3.2**    Communications

**3.2.1**    The Contractor shall promptly make available to the Subcontractor information which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

**3.2.2**    The Contractor shall not give instructions or orders directly to employees or workmen of the Subcontractor, except to persons designated as authorized representatives of the Subcontractor.

**3.3**    Claims by the Contractor

**3.3.1**    See Article 15.3

**3.3.2**    Not Used.

**3.4**    Contractor's Remedies

**3.4.1**    If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due the Subcontractor, provided, however, that if such action is based upon faulty workmanship or materials and equipment, the Architect shall first have determined that the workmanship or materials and equipment are not in accordance with requirements of the Prime Contract.

## ARTICLE 4

### SUBCONTRACTOR

**4.1**    Execution and Progress of the Work

**4.1.1**    The Subcontractor shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

**4.1.2**    The Subcontractor shall submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

**4.1.3**    The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the Owner, and supported by such evidence as the Contractor may direct. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**4.1.4**    The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as mutually agreed, including information on the status of materials and equipment, which may be in the course of preparation or manufacture.

**4.1.5**    The Subcontractor agrees that the Architect will have the authority to reject Work, which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Prime Contract.

**4.1.6**    The Subcontractor shall pay for materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**4.1.7**    The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

**4.1.8**    The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

**4.1.9 to 4.1.13** See Article 15.4 through 15.8

**4.2**    Laws, Permits, Fees and Notices

The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**4.2.1.1**    See Article 15.9

**4.2.2**    The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' or workmen's compensation acts insofar as applicable to the performance of the Subcontract.

**4.2.2.1**    See Article 15.10

Initialed for Roads Corporation: *m kA* Dated: *5/28/05*
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: *pt* Dated: *5//8/*

2 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*
**4.3**      Safety precautions and procedures

**.3.1**      The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons or property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within three days an injury to an employee or agent of the Subcontractor that occurred at the Project site.

**4.3.2**      If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the Project site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the Project site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the Project site.

**4.3.3**      In the event the Subcontractor encounters on the Project site material reasonably believed to be asbestos or polychlorinated biphenyl (PCB) which has not been rendered harmless, the Subcontractor shall immediately stop work in the area affected and report the condition to the Contractor in writing.

**4.4**      Cleaning Up

**4.4.1**      The Subcontractor at its own expense at all times shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

**4.5**      Warranty

**4.5.1**      The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

**4.6**      Indemnification

**4.6.1**      See Article 15.11

**4.6.2**      In claims against any person or entity indemnified under this Paragraph 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Paragraph 4.6 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**4.6.3**      The obligations of the Subcontractor under this Paragraph 4.6 shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them, provided such giving or failure to give is the primary cause of the injury or damage.

<u>**ARTICLE 5**</u>

**CHANGES IN THE WORK**

**5.1**      The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work that would be inconsistent with the changes made by the Modifications to the Prime Contract.

**5.2**      The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

**5.3 and 5.4**      See Article 15.12 and 15.13

**5.5**      A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

<u>**ARTICLE 6**</u>

**DISPUTE RESOLUTION**

**6.1**      See Article 15.14

Initialed for Roads Corporation: _MCP_ Dated: _5/28/05_
Rev. 10/99 ~ Federal Building Subcontract

Initialed for Subcontractor: _NL_ Dated: _5/7/04_
3 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

## ARTICLE 7

### REMEDIES OF THE CONTRACTOR; TERMINATION, OR ASSIGNMENT OF THE SUBCONTRACT

7.1     See Articles 15.15 through 15. 19.

## ARTICLE 8

### THE WORK OF THIS SUBCONTRACT

8.1     The Subcontractor shall execute the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others, as follows:

See Attachment A.

## ARTICLE 9

### DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

9.1     The Subcontractor's date of commencement is the date from which the Contract Time of Article 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.

9.2     Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

9.3     The Work of this Subcontract shall be substantially completed not later than     *Per Project Schedule - Attached*     , subject to adjustments of the Subcontract Time as provided in the Subcontract Documents and/or amended by the construction schedule issued under separate cover.

See Article 15.3

9.4     Time is of the essence in this Subcontract.

9.5     No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Article 5.2

## ARTICLE 10

### SUBCONTRACT SUM

**10.1     The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of     See Attachment "A"     , One Hundred Thirty Seven Thousand Dollars & 00/100 ($137,000.00)**
subject to the additions and deductions as provided in the Subcontract Documents.

10.2     The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor: N/A_

10.3     Unit prices, if any, are as follows:     **See Attachment "A"**

10.4     The retainage on this Subcontract is     ten     percent   10%     (%) (or such greater amount as may be withheld by Owner).  The amounts to be retained by the Contractor shall become due and payable upon determination by the Architect of the final quantities hereunder and receipt of payment of the retainage by the Contractor from the Owner; and when the Subcontractor has furnished satisfactory evidence that the Subcontract work has been fully performed and all charges and claims satisfied and all bills paid in full for labor, materials, equipment and supplies.

## ARTICLE 11

### PROGRESS PAYMENTS

11.1     Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to Applications for Payment submitted by the Contractor to the Architect, and Certificates for Payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents.

11.2     The period covered by each application for payment shall be one calendar month ending on the last day of the month or as follows:

11.3     Provided an application for payment is received by the Contractor not later than the     *Twenty-fifth*     day of the month, for work projected to the end of the month, the Contractor shall include the Subcontractor's Work covered by that application in the next Application for Payment, which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within ~~Thirty~~ working days after the Contractor receives payment from the Owner. It is

Initialed for Roads Corporation: *MKA* Dated: 5/12 8/03
Rev. 10/99 – Federal Building Subcontract

~~Thirty~~ Thirty MKA
(AW)

Initialed for Subcontractor: *AV* Dated: 5/8/y

expressly acknowledged that receipt of payment by the Contractor from the Owner on account of the work performed by the Subcontractor shall be a condition precedent to any obligation by the Contractor to make any payment to the Subcontractor. Fax an application for payment to the site office for approval. After approval, the original must e mailed to the Contractor's main office.

**11.4**    If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next Application for Payment submitted to the Architect.

**11.5**    Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

**11.6**    Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

**11.7**    Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

**11.7.1**    Take that portion of the Subcontract Sum properly allocated to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage retained per Article 10.4. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by Construction Change Directive(s), amounts not in dispute may be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

**11.7.2**    Add that portion of the Subcontract Sum properly allocated to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Subcontract to be applied to such materials and equipment in the Contractor's Application for Payment; Roads Corporation is not responsible to pay any finance charges or interest;

**11.7.3**    Subtract the aggregate of previous payments made by the Contractor;

**11.7.4**    Subtract amounts, if any, calculated under Article 11.7.1 or 11.7.2 which are related to the Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a Certificate of Payment for a cause which is the fault of the Subcontractor;

**11.7.5**    The payment of any current estimates or of any retained percentage hereunder shall not be construed as an acceptance of defective work or materials;

**11.7.6**    The Subcontractor shall promptly pay or discharge all bills, obligations, and charges incurred in connection with the prosecution of any of the work and shall promptly take all necessary steps to hold the Contractor fully harmless and indemnified from any cost, attorneys' fees, loss, or damage arising therefrom. Any such costs not paid by the Subcontractor as aforesaid may be deducted from sums due the Subcontractor hereunder.

**11.8**    Substantial Completion

**11.8.1**    When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the Certificate for Payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the Certificate to cover costs of items to be completed or corrected by the Subcontractor.

## ARTICLE 12

### FINAL PAYMENT

**12.1**    Final payment constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Contract Documents, the Architect has issued a Certificate for Payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner.

**12.2**    Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 13

### INSURANCE AND BONDS

**13.1**    The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

See Attachment B.

**13.2**    Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment.

**13.3**    Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are

*Company Name*
*Bldg 1614; Roads' Job #21002*
reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

**13.4**    The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

**13.5**    Waivers of Subrogation: The Contractor and Subcontractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**13.6**    Not Used.

**13.7**    The Subcontractor shall furnish a performance and a payment bond, each in an amount equal to the full Subcontract price. Such bonds shall be on forms furnished by, and with a surety satisfactory to, the General Contractor. The premium for such bonds shall be paid by the Subcontractor unless otherwise agreed upon in writing by the parties hereto.

## ARTICLE 14

## TEMPORARY FACILITIES AND WORKING CONDITIONS

**14.1**    The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services. These shall be furnished at no cost to the Subcontractor unless otherwise indicated below.

**14.2**    Specific working conditions:    N/A

## ARTICLE 15

## MISCELLANEOUS PROVISIONS

**15.1**    Where reference is made in this Agreement to a provision of the General Conditions or another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

**15.2**    Not Used.

**15.3**    Liquidated Damages

In the event any delay in the completion of the Prime Contract is caused or occasioned by the Subcontractor, which causes or results in damages being incurred by the Contractor including, but not limited to, liquidated damages as assessed by the Owner against the Contractor under the provisions of the Prime Contract, a sum equal to all such damages or expenses including such liquidated damages assessed shall be chargeable to and paid by the Subcontractor to the Contractor. It is agreed that any such damages, including liquidated damages, charged to the Subcontractor are based upon damages to the Contractor and shall not be construed as imposing a penalty.

**15.4**    The Subcontractor shall supply a sufficient number of skilled workmen and ample quantities of approved material and equipment to perform this Subcontract. Subcontractor shall promptly replace and dismiss any workman or workmen on the Project to which the Contractor, Owner, Engineer, or Architect objects.

**15.5**    The Subcontractor promptly shall commence the Work upon notice from the Contractor to do so and promptly and expeditiously shall perform the Work in accordance with the instructions of the Contractor. The Subcontractor shall utilize labor, approved materials, equipment, and tools in such quantities and of such types as the Contractor may from time to time deem necessary and shall work overtime or extra shifts as may be required by the Contractor, without additional cost to Contractor.

**15.6**    The Subcontractor shall complete the Work in sufficient time to allow the Contractor to complete the entire Project within the Contractor's planned schedule. If requested by the Contractor, Subcontractor shall furnish a progress schedule to the Contractor in such detail as the Contractor requires.

**15.7**    Suspension of work hereunder, for any cause, by the Subcontractor for a period of more than forty-eight (48) hours, Sundays and Holidays excepted, without prior written permission of the Contractor, shall be deemed a cessation of performance and shall be grounds for termination by the Contractor upon 24 hours written notice.

**15.8**    The Contractor expressly reserves the right to determine the order and sequence of the Work and phases thereof as herein provided. Subcontractor agrees that it shall make no claim whatsoever against the Contractor on account of the order and sequence of the Work which is directed by the Contractor. The Contractor will not be responsible to the Subcontractor for any delays or interference resulting from the acts, omissions, or operations of other subcontractors.

**15.9**    Subcontractor shall pay the amount of any and all taxes whatsoever levied against the Contractor and Subcontractor or either of them on account or as a consequence of any operations conducted under this Agreement or any of the Work.

**15.10**    Subcontractor warrants that it is familiar with and shall fully comply with, at its own expense, all provisions of the applicable Federal Occupational Safety & Health Act, Equal Employment Opportunity Programs, Affirmative Action Programs, and Minority Manpower Programs. Subcontractor agrees, upon request by Contractor, to produce within five (5) days whatever documents or information is required by the Contractor to establish Subcontractor's compliance with any applicable federal, state, municipal, or other regulatory laws, ordinances, or regulations.

Initialed for Roads Corporation: *MP* Dated: *5/28/05*
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: *tt* Dated: *5/3/04*

*Company Name*
*Bldg 1614; Roads' Job #21002*

15.11     To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents nd employees of any of them from and against claims, damages, losses and expenses, (including but not limited to attorney's fees), liabilities, fines, penalties, liens, demands and causes of action arising out of or resulting from performance of the Work under this Subcontract, provided that any such claim, damage, loss, expense, liability, fine, penalty, lien, demand or cause of action is attributable to bodily injury, sickness, disease or death, or injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, expense, liability, fine, penalty, lien, demand or cause of action is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Article 15.11.

To the fullest extent permitted by law, Subcontractor further agrees to indemnify, defend, and hold harmless the Contractor from and against any and all claims by the Owner or any person which pertains to or arises out of the acceptability, fitness, sufficiency, performance, or non-performance of the Work including materials used on or in the Work.

To the fullest extent permitted by law, Subcontractor further agrees to indemnify, defend and hold harmless the Contractor, Owner, Architect and Architect's consultants from and against any and all claims, damages, losses and expenses (including but not limited to attorneys' fees), liabilities, fines, penalties, liens, demands or causes of action suffered or incurred on account of any breach of any of the agreements or covenants in this Subcontract.

To the fullest extent permitted by law, Subcontractor further agrees to indemnify, defend and hold harmless, the Contractor from and against any and all claims, suits, liability, expense or damage, arising in connection with this Subcontract or anything done thereunder, for any alleged or actual infringement or violation of any patent or patented right or any trademark.

Subcontractor will defend any and all claims referred to in this Article 15.11 at its own cost and expense and will reimburse the Contractor for any attorneys' fees incurred by the Contractor with respect to any and all such claims. Notwithstanding the foregoing, the Contractor, at its sole discretion, reserves the right to defend itself, its surety, the Owner and/or any of the other indemnified parties. Such election to defend by the Contractor shall not in any way limit the Subcontractor's responsibility to indemnify and hold harmless the Contractor, its surety, the Owner and/or any of the other indemnified parties.

15.12     Claims of Subcontractor

The Subcontractor shall have no claim for extra or additional compensation or for any damage allegedly sustained or for any changes or modifications to the Work unless it shall have first complied with all the terms and provisions in the Prime Contract pertaining to submission of claims, changes, modifications, and damages. In no event shall the Contractor become or be liable to the Subcontractor on account of any such claims in excess of the amount actually received by the Contractor from the Owner on account of such claim.

Notwithstanding the foregoing, the acceptance by the Subcontractor of any payment hereunder shall operate as a waiver and release of its rights to receive or make ⁻laim for additional compensation for any work, labor, materials, equipment performed or furnished by it prior to the date of acceptance of said payment, excepting only its .ights with respect to payment of retained percentage by the Contractor as herein provided.

15.13     Except as otherwise provided in Article 15.18, the Subcontractor shall have no claim for damages of any kind for delays, hindrances or obstructions to the Work, or to the performance thereof, no matter how or by whom caused. In case of such delays, hindrances, or obstructions not due in any part to the Subcontractor's fault, Subcontractor shall be entitled only to such extension of time or performance as may be allowed by the Contractor provided that Subcontractor has timely requested an extension of time in writing.

15.14     Dispute Resolution

(a)   In case of any disputes between the Subcontractor and the Contractor, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is ʲound to Government both by the terms of the Prime Contract and by any and all decisions or determinations made thereunder by the party or board as authorized in the Prime Contract. It is agreed that in the event the Prime Contract contains a provision, hereinafter called "Disputes" clause, whereby claims may be resolved under an administrative procedure or by arbitration, then as to any claims of Subcontractor for or on account of acts or omissions of the Government or Government's Representative which are not disposed of by agreement, the Contractor agrees to present to the Government, in Contractor's name, all of Subcontractor's claims for additional monetary compensation or time extension which have been properly made to Contractor; and to further invoke, on behalf of the Subcontractor, those provisions in the Prime Contract for determining disputes. General Contractor shall have the option to present such claims on Subcontractor's behalf, in advance of and even without Subcontractor's written request. Subcontractor shall have full responsibility for preparation and presentation of such claims and shall bear all expenses thereof, including attorney's fees. Subcontractor agrees to be bound by the procedure and final determinations as specified in any such Disputes clause, and agrees that it will not take, or will suspend, any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination under such Disputes clause. Subcontractor shall not be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from the Government on account of subcontractor's work, less any markups or costs incurred by Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Government as full satisfaction and discharge of all claims for or on account of acts or omissions of the Government or the Government's Representative.

(b)   Subcontractor shall be bound by Contractor's determination, made in good faith, as to apportionment of any amounts received from Government from claimants including Contractor and other subcontractors, whose work is affected by any act or omission of the government or the Government's Representative.

(c)   Should a dispute arise as to proper interpretation of this Agreement, or work or material performed or furnished hereunder, arise which concerns the parties hereto only, or Supplier and other subcontractors or suppliers, but not the Government or Government's Representative, the same shall be decided by Contractor whose decision shall be final and conclusive.

(d)   Pending final disposition of any dispute under this Agreement, Subcontractor agrees to proceed diligently with the performance of this Subcontract and in accordance with the direction of Contractor.

15.15     Remedies of Contractor

The Subcontractor stipulates and agrees that each of the agreements and covenants herein contained, and by it made, constitutes a material condition of this Subcontract. In the event of any breach by the Subcontractor of any condition of this Agreement or of the Prime Contract herein incorporated by reference, then in that event the Contractor may:

Initialed for Roads Corporation: *MKA* Dated: 5/28/03
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: *At* Dated: 5/8/04
7 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

(1) Deduct from any payment otherwise due or becoming due to the Subcontractor all sums chargeable to Subcontractor and damages due from said breach; and/or

(2) Terminate the Subcontract for default in the following manner:

The Contractor shall give to Subcontractor written notice of the breach or breaches, and, unless said breach or breaches are cured within four (4) days from the date of the notice, the Subcontractor shall be deemed terminated for default, except for cessation of the Work in which case termination shall be upon twenty-four (24) hours written notice as provided in Article 15.7.

Upon such termination for default the Contractor may take immediate possession of all equipment, materials, tools, and appliances at the site or sites of the Work and may complete the Work either with its own forces or by the employment or any other person, firm, or corporation. Upon such termination for default, the Subcontractor shall not be entitled to and shall not receive any further payment whatsoever. When the Work is wholly completed, the Subcontractor shall pay Contractor all costs of completing the work (less the amount that the Contractor is paid by the Owner for completing the Work) and all damages of every kind or nature caused by said termination.

In the event the Contractor shall bring or be involved in any legal action on account of any breach of the Agreement by Subcontractor, Subcontractor agrees to pay Contractor all reasonable expenses, including but not limited to attorney's fees, in addition to the amount of any settlement or judgment and costs which may be recovered.

**15.16    Convenience Termination**

The Contractor may notify the Subcontractor to discontinue the entire Work or any part thereof. Such notice shall be given by the Contractor to the Subcontractor in writing, and, thereupon, the Subcontractor shall discontinue the entire Work, or such part thereof as the Contractor so designates.

If the Contractor notifies the Subcontractor to discontinue the entire Work, or any part thereof, the Contractor shall pay and the Subcontractor shall accept, as full payment for all work done and materials provided, the amount of compensation actually received by the Contractor from the Owner on account of Subcontractor's work subject to any claims of the Contractor against the Subcontractor. The Subcontractor shall not be paid and shall not have any claim for the loss of anticipated profits or for any other loss or damage resulting from a termination.

**15.17    Insolvency of Subcontractor**

In the event that the Subcontractor becomes insolvent, or is adjudged bankrupt, or files for protection under Chapter XI of the Bankruptcy Act, or makes an assignment for the benefit of creditors or if a Receiver is appointed to administer its affairs or it becomes otherwise disabled from performing this Agreement in accordance with its terms, the Contractor may immediately terminate this Subcontract by written notice to the Subcontractor.

**15.18    Non Commencement, Suspension or Delay**

If for any reason the work of the Prime Contract is not commenced or, having been commenced, is suspended, delayed or permanently stopped or, for any reason, is not performed by the Contractor, the Work thereupon shall not be commenced or shall be suspended, delayed or permanently stopped as the case may be, and the Subcontractor shall have no claim against the Contractor for damages of any kind due to the non-performance, suspension, delay, or permanent stoppage of the Work, except that the Subcontractor shall be entitled to receive from the Contractor the amount of compensation actually received by the Contractor from the Owner on account of Subcontractor's work subject to any claims of the Contractor against the Subcontractor.

**15.19    Assignment**
Neither this Subcontract nor any of the funds due or becoming due hereunder may be assigned or sublet by the Subcontractor without the prior written consent of the Contractor.

**15.20    Severability**
If any provision of this Subcontract, or any part thereof, shall be invalid or unenforceable, such provision or part shall be deemed severed, and the remainder thereof shall be given full force and effect.

**15.21    Compliance With Laws**
Subcontractor agrees to comply with all applicable local, state, and federal laws and executive orders and regulations issued pursuant thereto and agrees to indemnify Contractor against any liability, loss, cost, damage or expense by reason of Subcontractor's violation of this provision.

**15.22    Applicable Law**
This Subcontract, and all rights, obligations, liabilities and responsibilities of the parties hereto, shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**15.23    Government Work**
Subcontractor agrees that any part of the articles or work hereby ordered which is intended for use on Government work shall, at all times, be subject to such changes, suspensions, terminations, and cancellation of the uncompleted portion as the Government requires. Subcontractor shall not be entitled to any additional compensation for complying with such acts by the Government unless compensation is paid by the Government to the Contractor for Subcontractor's additional costs and only to the extent compensation is so paid. Subcontractor agrees to comply with all applicable statutes and valid governmental rules, regulations, requirements, provisions and conditions required by law to be included in this Subcontract, which are expressly incorporated herein.

**15.24    Federal Procurement Regulation Clauses**
If this Subcontract is entered into or arises under a Federal Government contract, Subcontractor agrees that, to the extent permitted by law, the most recently dated clauses are incorporated by reference with the same force and effect as if they were given in full text from the Code of Federal Regulations, with the understanding that, except with respect to Audit-Negotiation and Examination Records by the Comptroller General, those provisions shall be deemed to be modified as appropriate to substitute "Contractor" for "Government" or "Contracting Officer", to substitute "Subcontractor" for "Contractor", and to substitute "Subcontract" for "Contract".

Initialed for Roads Corporation: _MLQ_ Dated: _5/28/03_
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: _____ Dated: _____
8 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

## ARTICLE 16

### ENUMERATION OF SUBCONTRACT DOCUMENTS

16.1    The Subcontract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

16.1.1    This executed Agreement between Contractor and Subcontractor;

16.1.2    The Prime Contract, consisting of the Agreement between the Owner and Contractor, and the other Contract Documents enumerated in the Owner-Contractor Agreement; Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda and other documents enumerated therein;

16.1.3    The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

**Modification**    N/A                                                **Date**

16.1.4    Additional Documents, if any, forming part of the Subcontract Documents are as follows: **See Attachments A, B, and C.**


**This Agreement entered into as of the day and year first written above.**

**CONTRACTOR**
*Roads Corporation*
*241 Treble Cove Road*
*North Billerica, MA 01862*

*(Signature)* Mehdi Arya                    5/28/03
Project Manager                             *Date*


*Witness (Signature)*                       5-28-03
                                            *Date*


**SUBCONTRACTOR**
*Allstate Painting Co., Inc.*
*34 Day Street*
*Norwood, MA  02062*


*Authorized Representative (Signature)*      5/13/04
                                            *Date*


*Printed Name and Title*


*Witness (Signature)*                        5/13/04
                                            *Date*

Initialed for Roads Corporation: *MA* Dated: 5/22/03          Initialed for Subcontractor: *A* Dated: 5/13/04
Rev. 10/99 – Federal Building Subcontract                                                    9 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

## ATTACHMENT TO SUBCONTRACT
### ATTACHMENT A

Provide all labor, materials, tools and equipment required for the proper and complete performance of Work in accordance with the Contract Documents, Plans, Specifications, and all applicable Federal, State and Local Building Codes. This Subcontractor shall be bound to the General Contractor for the General Provisions, Supplements to the General Conditions, as the General Contractor is bound to the Owner. The separation of those documents into various sections are for convenience only and is not intended in any way to limit the scope of this agreement. Without limiting the generality hereof, the work also includes but is not limited to the following:

| | |
|---|---|
| **Scope of Work:** | *Painting and wall covering work as outlined in Sections 09720 – wall coverings And 09900 – Painting* |
| **Specification Sections:** | *09720 – Wall Coverings; 09900 – Painting and Division I of the Specifications* |
| **Including Drawings and Specifications Dated:** | *Phase I Volume I & II 100% Design Drawings dated 10/15/02; Phase I 100% Specifications dated 10/15/02 and USACE RFP* |
| **Special Provisions:** | *10% Retainage will be held in lieu of Performance/Payment Bond* |
| **Exclusions:** | *Painting of Exterior Surfaces (except Exterior Hollow Metal Doors and Frames which are included in this Contract).* |
| **Special Inclusions:** | *Sealed and epoxy painted floors and staining finishing all wainscotting, chair rail, millwork, trim and sills.* |
| **Notes:** | *If the wainscotting is purchased pre-finished $8,000 shall be deducted for the field finishing of the wainscotting included in this Contract. However, the touch-up work on the installed wainscotting will remain part of this Contract and is not included in the deduction listed above.* |

Initialed for Roads Corporation: *mkp* Dated: 5/28/03
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor *At* Dated 5/3/02

*Company Name*
*Bldg 1614; Roads' Job #21002*

## ATTACHMENT B

### INSURANCE REQUIREMENTS

Certificates of Insurance acceptable to the Contractor and/or Owner, shall be filed with the Contractor prior to commencement of the Work. These Certificates of Insurance shall contain a provision that coverage afforded under the applicable policies will not be cancelled, altered, or amended, or not renewed, until at least (30) days prior written notice has been given to the Contractor. Insurance coverage must be provided in a format, acceptable to the Contractor by insurance companies licensed to do business in the State, and acceptable to the Contractor and/or the Owner.

### The Limits of Liability shall not be less than the following:

| | |
|---|---|
| Coverage A – Workmen's Compensation: | Statutory. |
| Bodily Injury & Property Damage | $1,000,000.00 – per occurrence |
| General Aggregate | $1,000,000.00 – per project |
| Products & Completed Operations | $1,000,000.00 – annual aggregate |
| | |
| Automobile Liability | $1,000,000.00 – combined single limit |
| | |
| Employers Liability | $1,000,000.00 – each accident |
| | $1,000,000.00 – disease per employee |
| | $1,000,000,00 – disease policy aggregate |
| | |
| Umbrella Liability | $5,000,000.00 – per occurrence |
| | $5,000,000.00 – per project aggregate |

**The Owner and the General Contractor shall be named as "additional insured" on the Commercial General Liability, automobile and excess liability policies. Such insurance shall apply on a primary basis.**

### ADDITIONAL DOCUMENTS

| | |
|---|---|
| Certificate of Insurance | Must be returned with signed subcontract |
| Current SOMWBA Certificate **(if applicable)** | Must be returned with signed subcontract |
| Performance/Payment Bond **(if applicable)** | Must be returned with signed subcontract |
| W-9 Request for Taxpayer Identification Number | Must be returned with signed subcontract |
| List of Vendors/Suppliers Intended for Project Use (Incl. Name, Address & Phone Number) | (Please provide, no list attached) Must be returned with signed subcontract |
| Payment Requisition Policy & Procedures | For future reference and information |
| Application and Certificate for Payment (AIA Documents) | Sample for future reference and information |
| Certified Payroll Documents (2 Pages, Form WH-347) | For future reference and use |

Buy America Act

Prevailing Rate

Initialed for Roads Corporation: ___ Dated: 5/28/03
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: ___ Dated: 5/00/03

*Company Name*
*Bldg 1614; Roads' Job #21002*

### ATTACHMENT C
Page 1 of 2

### GENERAL PROVISIONS

1.  The Subcontractor shall furnish all shop drawings, as-builts, product data samples, and any other drawings or items as required in the specifications or by the Owner.

2.  The Subcontractor shall furnish all applicable Material Safety Data Sheets, for material related to the Subcontractor's work.

3.  This subcontractor is to make sure that every employee, supplier or contractor working in its behalf is to act in a safe, professional, courteous and workmanlike manner, and is familiar with the following rules:

    o   Parking in designated areas only
    o   No smoking inside the building
    o   No inappropriate or loud language
    o   No use of radios
    o   The use of steel-toe work shoes is a requirement which will not be waived

    Roads Corporation's superintendent may require an employee or worker to leave the premises at any time if their conduct becomes disruptive. The Superintendent's judgment in this matter will be final.

4.  This subcontractor is responsible to familiarize themselves with the actual field conditions. The field conditions are hereby incorporated into the work.

5.  Provide all required clean-up of this Subcontractors debris on a daily basis and place all such debris in dumpster provided by General Contractor or location designated by the Superintendent.

6.  **Submit for approval, by Roads Corporation, Schedule of Values, subcontractor's shop drawing/product data submittal schedule and delivery/installation schedule within one (1) week of contract execution. All contract billing shall be on AIA-style forms.**

7.  Provide protection related to work under this subcontract in accordance with all applicable Federal, State, County and Municipal laws.

8.  The Subcontractor agrees to actively participate in weekly schedule meetings and to coordinate their work with that of other subcontractors on the project so as to ensure that all work is completed according to the contractor's schedule.

9.  The Subcontractor shall perform and be responsible for layout, field dimensions, and engineering as part of their work. Roads Corporation will provide control points for layout.

10. The Subcontractor shall be responsible for providing the means and methods necessary for temporary protection of all areas associated with its work including the removal of temporary protection after the end of each shift, if required.

11. The Subcontractor shall employ only competent personnel trained in the tasks they are asked to perform. The Subcontractor shall provide in writing the name, address and off-hours number of members of the Subcontractors organization to be contacted in the event of an emergency.

12. Work will be performed in such a manner as not to block or hinder safe egress for other trades working on project.

*Company Name*
*Bldg 1614; Roads' Job #21002*

## ATTACHMENT C
### Page 2 of 2

13. The Subcontractor shall comply with all provisions of the regulations adopted hereunder, the State's Right to Know Law, OSHA regulations, Roads Corporation Safety Plan, US Army Corps of Engineers, and Hanscom Air Force Base, and all safety requirements of all applicable laws, ordinances, regulations, rules and orders of the locality in which the Work is done and shall hold the Contractor and Owner harmless from any and all claims, damages, or losses resulting in a violation of the provisions of this Subcontract.

14. All Subcontractor's employees must attend a brief orientation before beginning work on the project and will attend the daily safety meeting.

15. Sign in sheets are provided. Employees will sign-in upon entering the site.

16. Job Hours are 6:30 am to 3 p.m.

17. Base Etiquette: All speed limits must be obeyed. Seat Belts are required, and the use of cell phones while entering the gate is prohibited. Be sure that all employees have proper identification and vehicles from out of state have a valid registration and proof of insurance.

18. All equipment being used by the Subcontractor shall be inspected on a weekly basis and maintenance reports will be turned in.

19. Subcontractor shall note the requirements for the Disadvantaged Business and Hubzone Programs and comply with all provisions therein.

Initialed for Roads Corporation: ᴀᴋᴀ Dated: 5/28/03
Rev. 10/99 – Federal Building Subcontract

Initialed for Subcontractor: Dated: 5/30/03
13 of 14

*Company Name*
*Bldg 1614; Roads' Job #21002*

### 20. Submittal Requirements:

To expedite the review of product submittals and drawings Subcontractors will adhere to the following standards for submittals:

1. Product submittals must reference the specification section. This can be done with tab section dividers with the section written on the tab or stating the section on the cover.

2. Cut sheets must have the specific item to be used on the project highlighted. ***Cross out the items that do not apply to this project.***

3. Reference Section 01330 of the specifications and provide submittal descriptions as described on pages 01330-1 through 01330-3.

4. Drawings – Include dimension and size details as well as PE or certification stamps as required by the plans and specifications.

5. References – If a standard (ANSI, ASTM, AWI, NFPA, etc.) is referenced at the beginning of a section, proof must be submitted to demonstrate compliance with the standard.

6. If the submittal is a critical path item for the Subcontractor's activity, include the date the Subcontractor needs for submittal approval, this will allow the Contractor to prioritize its review process.

7. Include a contact name and phone number for the submittal preparer or project manager in the bound submittal (preferably on the cover).

8. Unless otherwise directed, 10 copies of all submittals should be submitted.

## CHANGE ORDER #1

**PROJECT:**   Building #1614 – Hanscom AFB, Bedford, MA

**DATE:**   10/13/03

**TO:**   **Allstate Painting**
**34 Day Street**
**Norwood, MA 02062**

### The Contract is changed as follows:

**Furnish and install all new wall covering (Pattern-Echo, Color-Slate) in the SCIF Bump-Out. This price is base on a premium time labor. The work shall be performed in accordance with the attached schedule dated 10/13/03.**

**TOTAL CHANGE ORDER :   =  $3,840.00**

All quantities are to be field Measured. Above work to be performed as per plans and specifications.

| Not valid until signed by the Contractor and Subcontractor |
| --- |

The original (**Contract Sum**) (Guaranteed Maximum Price) was.................................... $ 137,000.00
Net Change by previously authorized Change Orders ............................................... $    -0.00-
The (**Contract Sum**) (Guaranteed Maximum Price) prior to this Change Order was............. $ 137,000.00
The (**Contract Sum**) (Guaranteed Maximum Price) will be **(increased)**
   by this Change Order in the amount of.......................................... $   3,840.00
The new (**Contract Sum**) (Guaranteed Maximum Price) including this Change Order will be  $ 140,840.00
The Contract time will be (increased) (decreased) (unchanged) by...............................UNCHANGED
The date of Substantial Completion as of the date of this Change Order therefore is..............UNCHANGED

Note: This summary does not reflect changes in the Contract Sum. Contract Time or Guaranteed Maximum Price, which have been authorized by Construction Change Directive.

**ROADS CORPORATION**
241 Treble Cove Road
N. Billerica, MA 01862

BY: Matty K. Arya
     Project Manager

SIGNATURE: _____

DATE: _____

**Allstate Painting**
34 Day Street
Norwood, MA 02062

BY: _____
          (Please Print)

SIGNATURE: _____

DATE: _____

Ref: CHANGE ORDER

## CHANGE ORDER #2

**PROJECT: Building 1614, Hanscom AFB, Bedford, MA**

**DATE: November 24, 2003**

**TO: Allstate Painting Co., Inc.**
    **34 Day Street**
    **Norwood, MA  02062**

**The Contract is changed as follows:**

1. **Provide, (Furnish and Install) all painting work for Phase II of the above referenced project in accordance with Specification Section 09900 – Painting –**
Add: $105,454.00

2. **Provide, (Furnish and Install) all wallcovering work for Phase II of the above referenced project in accordance with Specification Section 09720 – Wallcoverings**
Add: $44,088.00

3. **Provide, (Furnish and Install) all painting work for the Structural Steel at the exterior entrance Canopies (Phase I & II) in accordance with Specification Section 09900- Painting**
Add: $5,400.00

4. **Eliminate the Field Finishing of the Wainscoting in Phase I of the above referenced project in accordance with the Note on "Attachment A" of the Subcontract. (The wainscoting was supplied pre-finished.)**
Deduct: <$8,000.00>

**Notes:**

    A. **All work shall be in accordance with the 100% Phase I and Phase II Plans, Specifications and the USACE RFP.**

    B. **Finishing the work of Section 06200 – Finish Carpentry is excluded from Item #1 (Phase II Painting) listed above.**

**TOTAL CHANGE ORDER #2: ~  $146,942.00**

All quantities are to be field Measured.
Above work to be performed as per plans and specifications.

| Not valid until signed by the Contractor and Subcontractor |
| --- |

The original (Contract Sum) was.................................................................................................$137,000.00
Net Change by previously authorized Change Orders .........................................................$  3,840.00
The (Contract Sum) prior to this Change Order was............................................................$140,840.00
The (Contract Sum) will be (increased) by this Change Order in the amount .................$146,942.00
The now (Contract Sum) including this Change Order will be............................................$287,782.00
The Contract time will be (increased) (decreased) (unchanged) by....................................Increased
The date of Substantial Completion as of the date of this Change Order therefore is..............March 31, 2004 (Ph II)

Ref: CHANGE ORDER

## CHANGE ORDER # 2A (Revised)

**PROJECT: Building 1614, Hanscom AFB, Bedford, MA**

**DATE: 2/16/04**

**TO:  Allstate Painting Co., Inc.**
**34 Day Street**
**Norwood, MA  02062**

**The Contract is changed as follows:**
**To seal concrete floors at IDF's 1, 2 and 3 based on premium labor.**

### TOTAL CHANGE ORDER #2A Revised: = $2,834.00

All quantities are to be field Measured. Above work to be performed as per plans and specifications.

| Not valid until signed by the Contractor and Subcontractor |
|---|

**NOTE:  This Change Order has been revised to include corrected Contract amounts listed below (3/4/05):**

The original (Contract Sum) was ..................................................................................$137,000.00
Net Change by previously authorized Change Orders ............................................$150,782.00
The (Contract Sum) prior to this Change Order was ...............................................$287,782.00
The (Contract Sum) will be (increased) by this Change Order in the amount .................. .$  2,834.00
The new (Contract Sum) including this Change Order will be...............................$290,616.00
The Contract time will be (increased) (decreased) (unchanged) by..........................UNCHANGED
The date of Substantial Completion as of the date of this Change Order therefore is.................UNCHANGED

**Note:** This summary does not reflect changes in the Contract Sum, Contract Time or Guaranteed Maximum Price, which have been authorized by Construction Change Directive.

**ROADS CORPORATION**
241 Treble Cove Road
N. Billerica, MA  01862

BY: Matty K. Arya
    Project Manager

SIGNATURE: _____

DATE: _____

**ALLSTATE PAINTNG CO., INC.**
34 Day Street
Norwood, MA  02062

BY: _KEVIN J KNICUT_
         (Please Print

SIGNATURE: _____

DATE: ____3·8·05_____

Ref: CHANGE ORDER

eceived: Case 1:05-cv-44089-NMG     Document 1-4     Filed 06/27/2005     Page 4 of 5
03/16/2004  09:37     7818611                          ROADS CORP                              PAGE  02
                                                                                            Page 1/1
Sent By: ALLSTATE CO;          1 781 551 3628;     Mar-15-04  2:56PM;
                               7818611544 -> ALLSTATE CO;   Page 2
03/15/2004  15:15     7818611544                    ROADS CORP                    PAGE  02

## CHANGE ORDER #3

**PROJECT:**      Building #1614 – Hanscom AFB, Bedford, MA

**DATE:**      3/15/04

**TO:**      Allstate Painting
             34 Day Street
             Norwood, MA 02062

**The Contract is changed as follows:**
- Repaint at areas damaged by furniture installation through 1/22/04
  **$10,342.00**
- Repaint at areas damaged by furniture installation through 2/20/04
  **$6,318.00**
- Steam clean carpet due to paint stains
  **<$2,100.00>**

**TOTAL CHANGE ORDER :**   =  **$14,560.00**

All quantities are to be field Measured. Above work to be performed as per plans and specifications.

| Not valid until signed by the Contractor and Subcontractor |
| --- |

The original (Contract Sum) (Guaranteed Maximum Price) was.................................... $ 137,000.00
Net Change by previously authorized Change Orders ........................................ $   6,674.00
The (Contract Sum) (Guaranteed Maximum Price) prior to this Change Order was.............. $ 143,674.00
The (Contract Sum) (Guaranteed Maximum Price) will be (increased)
                              by this Change Order in the amount of............................... $  14,560.00
The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be  $ 158,234.00
The Contract time will be (increased) (decreased) (unchanged) by.............................UNCHANGED
The date of Substantial Completion as of the date of this Change Order therefore is.............UNCHANGED

Note: This summary does not reflect changes in the Contract Sum, Contract Time or Guaranteed Maximum Price, which have been authorized by Construction Change Directive.

**ROADS CORPORATION**                          **Allstate Painting**
241 Treble Cove Road                            34 Day Street
N. Billerica, MA 01862                          Norwood, MA 02062

BY: **Matty K. Arya**                          BY: __KEVIN  J KNICHT__
    Project Manager                                      (Please Print)

SIGNATURE: _Matty K. Arya_                     SIGNATURE: _____

DATE: ___3/16/04___                            DATE: ___3 15 04___

Ref: CHANGE ORDER

## CHANGE ORDER # 4

**PROJECT:  Building 1614, Hanscom AFB, Bedford, MA**

**DATE: 3/4/05**

**TO: Allstate Painting Co., Inc.**
**34 Day Street**
**Norwood, MA  02062**

### The Contract is changed as follows:

1. **Additional painting work authorized on EWO slips dated 6/17/04, 6/25/04 and**
   **7/9/04                                        $6,167.00**

2. **Additional painting work as outlined in Allstate Invoice #204207 dated 12/1/04 and**
   **in Allstate's letter dated 10/25/04               $3,394.00**

### TOTAL CHANGE ORDER #4: = $9,561.00

All quantities are to be field Measured. Above work to be performed as per plans and specifications.

> Not valid until signed by the Contractor and Subcontractor

| | |
|---|---|
| The original (**Contract Sum**) was | $137,000.00 |
| Net Change by previously authorized Change Orders | $168,176.00 |
| The (**Contract Sum**) prior to this Change Order was | $305,176.00 |
| The (**Contract Sum**) will be (increased) by this Change Order in the amount | $  9,561.00 |
| The new (**Contract Sum**) including this Change Order will be | $314,737.00 |
| The Contract time will be (increased) (decreased) (unchanged) by | UNCHANGED |
| The date of Substantial Completion as of the date of this Change Order therefore is | UNCHANGED |

**ROADS CORPORATION**
241 Treble Cove Road
N. Billerica, MA  01862

BY: <u>Matty K. Arya</u>
      Project Manager

SIGNATURE: _____

DATE: _____

<u>ALLSTATE PAINTNG CO., INC.</u>
34 Day Street
Norwood, MA  02062

BY: _____
              (Please Print)

SIGNATURE: _KEINS J KWICHT_

DATE: ___3·8·05___

Ref: CHANGE ORDER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Kerri Enterprises,the

1. Title of case (name of first party on each side only) __United States of America f/u/o _Allstate Company,Inc.__
   __v. United States Fidelity & Guaranty Company__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local
   rule 40.1(a)(1)).

   | | | |
   |---|---|---|
   | ☐ | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
   | ☐ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121 |
   | | | 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases |
   | ☒ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, |
   | | | 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, |
   | | | 380, 385, 450, 891. |
   | ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, |
   | | | 690, 810, 861-865, 870, 871, 875, 900. |
   | ☐ | V. | 150, 152, 153. |

   05 11339 NMG

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒    NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒         Central Division ☐         Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
        residing in Massachusetts reside?

   Eastern Division ☐         Central Division ☐         Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
   submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Robert Philip Hilson__
ADDRESS__Law Offices of Robert Philip Hilson, 175 Derby Street, Suite 12, Hingham, MA 02043__
TELEPHONE NO. __(781) 740-4118__

(CategoryForm.wpd - 2/15/05)

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Kerri Enterprises,
United States of America f/u/o  Allstate Company,
Inc.

**(b)** County of Residence of First Listed Plaintiff  Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert Philip Hilson, Esq.    (781) 740-4118
Law Offices of Robert Philip Hilson
175 Derby Street, Suite 12, Hingham, MA 02043

## DEFENDANTS

United States Fidelity & Guaranty Company

County of Residence of First Listed Defendant  Norfolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☒ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
40 U.S.C. 3131
Brief description of cause: Plaintiff seeks subcontract balance of $38,707.00 for labor and materials
furnished on the Hanscom Air Force Base in Bedford, MA

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 38,707.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☒ No

## VIII. RELATED CASE(S)
## IF ANY

(See instructions):    JUDGE                        DOCKET NUMBER

DATE
6. 27. 5

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE